


**FILED**

Apr 12 2018, 3:23 pm

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

I N  T H E

# Indiana Supreme Court

Supreme Court Case No. 45S03-1710-CT-635

## Elizabeth Roumbos,
*Appellant (Plaintiff)*,

–v–

## Samuel G. Vazanellis &
## Thiros and Stracci, PC,
*Appellees (Defendants)*,

Argued: November 9, 2017 | Decided: April 12, 2018

Appeal from the Lake Superior Court
No. 45D01-1501-CT-2
The Honorable John M. Sedia, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 45A03-1606-CT-1424

**Opinion by Justice Slaughter**

Chief Justice Rush and Justices David, Massa, and Goff concur.

**Slaughter, Justice.**

This case is nominally about lawyer malpractice but really about premises liability. Plaintiff was 85 years old when she fell and severely fractured her leg while visiting her husband in the hospital. Plaintiff retained Defendants—a lawyer and his law firm—to represent her against the hospital. Defendants missed the filing deadline by failing to sue the hospital within the applicable statute of limitations. Under the "trial-within-a-trial" doctrine, a client alleging legal malpractice must prove not only that the lawyer's conduct fell below the governing duty of care but also that the client would have prevailed had the lawyer not been negligent. Neither side disputes that missing a filing deadline breaches the duty of care lawyers owe to clients. So this case is about the second prong: Would Plaintiff have won her claim against the hospital had the lawyer timely sued?

The law firm invokes a defense the hospital would have asserted—that the hospital did not breach its duty under premises-liability law because Plaintiff's fall was caused by a known or obvious condition: the wires and cords lying on the floor on which she allegedly tripped. We granted transfer to consider whether, as the Court of Appeals held, the landowner bears the burden on summary judgment to disprove that the invitee was distracted from or forgot about a known danger on the premises when the invitee made no such claim and designated no such evidence herself. But after oral argument, it is clear this issue is not squarely before us. Both parties now concede the invitee did not know of the tripping risk that she claims caused her fall. Although we have previously vacated grants of transfer when the factual premise for our grant proves false, we elect to decide this case on its merits.

We hold that Defendants, as movants on summary judgment, failed to negate the causation element of Plaintiff's malpractice claim. Specifically, Defendants failed to establish, as a matter of law, that Plaintiff would not have succeeded in her premises-liability claim against the hospital. We reverse the trial court's order granting summary judgment for Defendants and remand.

## Factual and Procedural History

During the wee morning hours, Plaintiff, Elizabeth Roumbos, called an ambulance to rush her elderly husband to the emergency room at St. Anthony Hospital in Crown Point, Indiana. The hospital eventually admitted him and assigned him to a single-occupancy room. For a few hours, Roumbos stayed in the room by his side before going home to rest. At about noon, she returned to the hospital to check on his condition and spend time with him. After about twenty minutes, he asked for a glass of water. She got up from her seat and walked around the foot of the bed to a table on the other side. She poured him some water and handed him the glass. He took a few sips and returned the glass, which she put back on the table. As she was returning to her seat, she tripped and fell, fracturing her femur. Roumbos originally claimed the cause of her fall was a "dangerous mess of cords and wires on the floor", which she only saw after she fell. Most recently, Roumbos specified the telephone cord was the cause.

Roumbos retained Samuel Vazanellis and his law firm, Thiros and Stracci, PC, to sue the hospital for negligence under a theory of premises liability. The firm did not sue within the applicable statute of limitations, so Roumbos sued the firm for malpractice. The firm moved for summary judgment, arguing Roumbos could not prove injury resulting from the firm's negligence because she would not have prevailed against the hospital in any event. The trial court entered summary judgment for the firm. The Court of Appeals reversed, concluding that summary judgment was improper because even if Roumbos knew of the tripping hazard, the firm designated no evidence the hospital could not have reasonably anticipated the harm Roumbos sustained. We granted transfer, and at oral argument the parties acknowledged Roumbos did not know of the telephone cord or other wires on the floor.

## Discussion and Decision

We hold the trial court erred in granting summary judgment for the law firm. The designated evidence establishes a genuine issue of material

fact—whether the phone cord and other wires posed an obvious danger. Although we can imagine scenarios when the dangerous condition is so clearly obvious that no reasonable factfinder could conclude otherwise, this is not such a case. We assess obviousness from a reasonable person's perspective and hold on this record that obviousness is a question for the finder of fact. Thus, because the firm failed to prove that Roumbos could not prevail against the hospital, the firm did not negate the causation element of her malpractice claim. We reverse and remand.

The law firm also argued that Roumbos equivocated about the condition of the premises that she contends was dangerous and caused her fall. The Court of Appeals rejected this argument in its initial opinion, see *Roumbos v. Vazanellis*, 71 N.E.3d 64, 66 n.1 (Ind. Ct. App. 2017), and again on rehearing, 78 N.E.3d 1114, 1115 (Ind. Ct. App. 2017), trans. granted. We find that Roumbos has consistently identified wires on the floor generally or the telephone cord specifically as the cause of her fall and summarily affirm the Court of Appeals on this issue.

## I.    The viability of Roumbos's malpractice claim against the law firm turns on the merits of her underlying premises-liability claim against the hospital.

### A.  Causation element of legal-malpractice claim and trial-within-a-trial doctrine

To prevail on her malpractice claim against the law firm, Roumbos has to prove three things: 1) She retained the firm to represent her legal interests, so that the firm owes her a duty of care; 2) the firm breached its duty of care by failing to exercise the ordinary skill and knowledge expected of lawyers; and 3) the firm's breach was the proximate cause of Roumbos's injury. *Reiswerg v. Statom*, 926 N.E.2d 26, 30 (Ind. 2010) (citation omitted). Only the third element—whether the firm's breach proximately caused her injury—is at issue here. At least for summary-

judgment purposes, the firm does not contest that it owed Roumbos a duty, or that it breached that duty.

In support of summary judgment, the firm invokes the "trial within a trial" doctrine that governs claims for legal malpractice. *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 344 (Ind. 1991), abrogated on other grounds by *Liggett v. Young*, 877 N.E.2d 178, 183 (Ind. 2007). Under this doctrine, the client must show the outcome of the botched representation would have been more favorable to the client had the lawyer not been negligent. *Flatow v. Ingalls*, 932 N.E.2d 726, 729 (Ind. Ct. App. 2010). In other words, the client must prove the lawyer's negligence proximately caused her injury. *Hill v. Bolinger*, 881 N.E.2d 92, 94 (Ind. Ct. App. 2008). Thus, Roumbos must prove she would have recovered damages against the hospital in the underlying premises-liability claim had the firm timely sued on her behalf.

## B. Elements of premises-liability claim against hospital

For purposes of this appeal, the parties agree that when Roumbos fell she was the hospital's invitee. In *Burrell v. Meads*, 569 N.E.2d 637 (Ind. 1991), we adopted the Restatement (Second) of Torts Section 332 definition of invitee, which refers to either a "public invitee" or a "business visitor". *Id.* at 642. Although the parties do not specify which definition applies to Roumbos, she appears to satisfy at least the definition of a business visitor: "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Id.* (citing Restatement (Second) of Torts § 332 (1965)).

Under Indiana premises-liability law, the owner or possessor of land owes the highest duty of care to its invitees: the duty to exercise reasonable care for their protection while they are on the premises. *Id.* at 639 (citation omitted). Restatement Section 343 provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

569 N.E.2d at 639-40 (citing Restatement § 343).

The Restatement instructs that Section 343 should be read together with Section 343A. Restatement § 343, cmt. a. Under Section 343A, the landowner is generally not liable for injuries resulting from "known or obvious" dangers on the land. But there is an exception if a reasonable landowner would anticipate the harm despite the invitee's knowledge or the danger's obviousness. "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement § 343(A)(1). See, e.g., *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004) (quoting Restatement § 343A(1)).

Based on these principles, the law firm argued on appeal that the hospital would not have been liable to Roumbos because the telephone cord was a "known" or "obvious" hazard that the hospital had no reason to believe she would fail to avoid. What follows from this, according to the firm, is that "Ms. Roumbos had no premises liability claim against St. Anthony Hospital and, consequently, has no legal malpractice claim against the Thiros law firm."

## II. Summary judgment for the law firm was improper because genuine issues of material fact remain on the causation element of Roumbos's premises-liability claim.

After construing the facts and reasonable inferences in favor of Roumbos, as required by our summary-judgment standard, we conclude the firm did not satisfy its burden of negating the proximate-causation element of her legal-malpractice claim because it did not negate an essential element of her premises-liability claim against the hospital. Whether the wires generally, or the phone cord specifically, posed a danger that was **known** to Roumbos, or should have been **obvious** to her, are factual questions for the finder of fact and not legal questions for the court.

### A. Not "known"

A condition to land or premises is "known" under Section 343A if the plaintiff is both aware of the condition and appreciates its danger. Restatement § 343A, cmt. b. In its initial opinion, the Court of Appeals accepted the law firm's argument that Roumbos knew about the wires. *Roumbos*, 71 N.E.3d at 69. Despite this finding, the law firm acknowledged during oral argument in our Court that Roumbos did not know about the wires after all. We agree with the firm. Roumbos testified unequivocally that she did not see the wires until after she had fallen and was lying on the floor.

Q. So you knew that the wires were there when you walked over, didn't you?

A. No.

Q. You didn't see them?

A. No.

We construe all inferences in Roumbos's favor on the firm's summary-judgment motion. Thus, we assume the wires were unknown to her.

## B. Not "obvious"

Though conceding Roumbos did not know of the wires' presence, the firm still claims the hospital did not breach any duty since the wires should have been "obvious" to her. A condition is "obvious" under Section 343A if both the condition and the risk are apparent to, and would be recognized by, a reasonable person in the position of the visitor exercising ordinary perception, intelligence, and judgment. Restatement § 343A, cmt. b.

The second prong of our Section 343 analysis asks a similar question about the obviousness of the condition, but does so from the perspective not of the invitee but of the landowner. Section 343 considers whether the landowner should expect that invitees will fail to discover or realize the danger, or will fail to protect themselves against it. When analyzing breach of duty under Section 343, we evaluate a landowner's knowledge under an objective, reasonable-person standard. See *Smith v. Baxter*, 796 N.E.2d 242, 244 (Ind. 2003). Thus, the same analysis applies, whether viewed from the landowner's perspective under Section 343 or from the invitee's under Section 343A. Either way, it is an issue of reasonableness: What should the landowner expect will not be discovered under Section 343? And what should be obvious to the invitee under Section 343A?

Whether a risk is obvious is a question courts can sometimes resolve on summary judgment. For example, we found no issue of material fact regarding a golf-course operator's objectively reasonable expectation that persons on the course would "realize the risk of being struck by an errant golf ball and take appropriate precautions." *Pfenning v. Lineman*, 947 N.E.2d 392, 406 (Ind. 2011). Viewed through the lens of Section 343A, we could also say that the risk of errant golf balls is apparent to and recognized by a reasonable person on a golf course exercising ordinary perception, intelligence, and judgment.

We have likewise held that a professional baseball club would have no reason to believe that a spectator in the stands would not realize the danger of or fail to protect herself from foul balls entering the stands. *S. Shore Baseball, LLC v. DeJesus*, 11 N.E.3d 903, 910 (Ind. 2014) (holding that danger's obviousness was highlighted by warning printed on her ticket, warning sign in aisle near her seat, and public-address announcement made before beginning of game). From the vantage point of the reasonable invitee, the risk of baseballs entering the stands was obvious.

Unlike the obvious risks in those cases, however, we conclude that a material factual dispute remains here: Does the firm's designated evidence establish that the various wires on the hospital-room floor and the risks they pose would be apparent to a reasonable person? Construing the designated facts most favorably to Roumbos and drawing all reasonable inferences in her favor, we hold that a jury could reasonably find the wires were not obvious to the ordinary reasonable person in Roumbos's position.

The law firm tries to establish the wires on the floor should have been apparent to Roumbos. Although Roumbos's husband had been a patient at the hospital a "number of times", the record does not establish that his prior rooms were all identically configured—or, relevant here, that they all had wires lying on the floor that posed a tripping risk.

For all we know, the hospital bed and table obstructed the wires from view until Roumbos was right on top of them. And by then it was too late. Roumbos testified the room where she fell had at least three different wires or cords running along the floor—one each for oxygen, a telephone, and a computer. The fact that Roumbos acknowledged she "probably" would have seen the wires if she had been looking down at the floor makes the issue of obviousness here a close call. But Roumbos testified the wires ran partially "underneath the table" on the opposite side of the hospital bed from where she was sitting. The table Roumbos refers to— where the pitcher of water was resting—is a typical hospital-room table that could be rolled into place over or alongside the patient's bed. As Roumbos explained, it was a "portable kind of table that you could put – slide in front of him". The wires were lying flush on the floor but were not

secured or "held down by anything". We know Roumbos had already traversed the wires successfully when she went to the other side of the room from where she had been sitting to pour her husband's water. And only while returning to her seat did she trip over one or more of them and fall.

As to the phone cord specifically, Roumbos acknowledged that before she fell she saw a phone on the table but no cords or wires on the floor. The firm argues that any adult knows that a telephone has a cord that connects to the wall. But even if that were true, it misses the point. Some phones are plugged into the wall only inches from the floor, making it more likely that a cord runs along the floor. Other phones plug into the wall well off the floor, meaning the cord may not touch the floor at all, especially if it is taut, with little or no slack. And yet other hospital-room phones plug directly into the bed, along with other cords and wires. The mere presence of a phone on the portable hospital table did not necessarily mean that a dangerous tripping threat existed on the floor that should have been obvious from Roumbos's vantage point. Whether the wires generally, or the phone cord specifically, were obvious because they would have been apparent to a reasonable person under the circumstances is a disputed issue of material fact on this record that precludes summary judgment.

## Conclusion

For these reasons, we reverse the trial court's order granting summary judgment for the law firm and remand to the trial court for further proceedings not inconsistent with this opinion.

Chief Justice Rush and Justices David, Massa, and Goff concur.

ATTORNEYS FOR APPELLANT

Mark S. Pantello
Fort Wayne, Indiana


ATTORNEYS FOR APPELLEES

David C. Jensen
Robert J. Feldt
Hammond, Indiana