

FILED

Sep 25 2018, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carrie Castro
Law Office of Carrie Castro
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

David C. Jensen
Robert J. Feldt
Eichhorn & Eichhorn, LLP
Hammond, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael D. Goodwin,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>David L. DeBoer,<br>*Appellee-Defendant.* | September 25, 2018<br><br>Court of Appeals Case No.<br>18A-CT-514<br><br>Appeal from the Lake Superior<br>Court<br><br>The Honorable Calvin D.<br>Hawkins, Judge<br><br>Trial Court Cause No.<br>45D02-1709-CT-88 |

**Najam, Judge.**

## Statement of the Case

[1]      Michael D. Goodwin sued his former attorney David L. DeBoer for legal malpractice, breach of fiduciary duty, and fraudulent concealment after Goodwin pleaded guilty in a federal criminal cause of action in which DeBoer, along with two other attorneys, had represented Goodwin. The essence of

Goodwin's civil claims against DeBoer are that, had DeBoer rendered competent representation to Goodwin in the federal action, Goodwin would not have pleaded guilty. But, after an evidentiary hearing before the federal district court in a post-conviction proceeding, the court rejected the factual and legal issues that Goodwin now relies on to support his theory that he would not have pleaded guilty had DeBoer acted differently. Accordingly, as a matter of law Goodwin is precluded from now arguing that DeBoer's alleged malpractice proximately caused Goodwin to plead guilty. As such, we affirm the trial court's entry of summary judgment for DeBoer.

## Facts and Procedural History

In 2011, Goodwin hired Indiana attorneys Clark W. Holesinger and DeBoer and Texas attorney William E. Kelly III to represent him in a federal criminal action for alleged Medicaid fraud in Texas. In May of 2012, Holesinger and DeBoer retained a Medicaid expert, Christine Miller, who authored a draft report on Goodwin's alleged fraud.

In December, Goodwin entered into a written plea agreement with the United States. Pursuant to his plea agreement, Goodwin agreed to plead guilty to one count of health care fraud, and, in exchange, the United States dismissed eleven other counts. At a hearing on Goodwin's guilty plea, Goodwin acknowledged as true a "factual resume" that established a factual basis for the offense. Appellant's App. Vol. 3 at 126-31, 177. On several occasions, the court asked Goodwin if he had reviewed his plea agreement and decision to plead guilty with his attorneys. Goodwin repeatedly affirmed that he had done so. With

respect to the factual resume in particular, Goodwin stated that he had "gone over it completely" with his attorneys "[m]any times." *Id.* at 177-78. The court entered its judgment of conviction against Goodwin and sentenced him to fifty months with the Federal Bureau of Prisons.

[4] Thereafter, in April of 2014 the Porter County Prosecutor alleged that Holesinger "stole approximately $380,000.00 from Dr. Michael Goodwin and his wife . . . during the time he represented Dr. Goodwin for Medicaid fraud." Appellant's App. Vol. 12 at 76. Holesinger surrendered his Indiana law license and pleaded guilty to several federal and state crimes. However, despite the Porter County Prosecutor's allegation, none of Holesinger's convictions directly related to funds allegedly stolen from Goodwin.

[5] Shortly after learning of Holesinger's conduct, Goodwin moved to have the district court set aside his guilty plea on the basis that Holesinger had rendered ineffective assistance, which motion Goodwin later amended. In relevant part, Goodwin's amended motion argued that Holesinger had advised him to plead guilty, and Goodwin had acted on that advice, while Holesinger "was burdened by an actual conflict of interest . . . due to his theft of approximately [$380,000] from Goodwin during his representation . . . ." Appellant's App. Vol. 11 at 135. Goodwin further alleged that Holesinger's advice was ineffective because Holesinger had "concealed the Miller Report" from Goodwin, which Goodwin argued was "favorable and necessary for Goodwin's defense." *Id.* at 142-43. In other words, Goodwin argued that, had he known of Holesinger's conduct

and/or the Miller report, he would not have pleaded guilty. *See* Appellant's App. Vol. 12 at 122.

[6] The district court set a hearing date on Goodwin's amended motion. Ten days before that hearing, in June of 2016, DeBoer sent to Goodwin's wife a draft statement for the court on Goodwin's behalf, which statement Goodwin's wife "immediately" surrendered to Goodwin's acting counsel. *Id.* at 96-97. In that statement, DeBoer said:

> It seems almost [a] foregone conclusion to me that if Clark Holesinger was stealing from Michael Goodwin while representing him in the Medicaid case, Goodwin did not have the benefit of appropriate[,] competent representation.
>
> Did Holesinger steal from Goodwin? In my opinion, it is far more probable than not that he did.
>
> I come to that conclusion by recalling my observations of Holesinger during the months I helped him with the Goodwin case. The nature of the federal Medicaid fraud case meant not only did [Goodwin] face criminal penalties for [the] alleged violations, he also was at risk to lose all or a large part of his substantial net worth. Bank accounts were frozen, real estate was attached. During visits to his office, I overheard Holesinger's portion of phone conversations cutting deals with bankers in charge of Goodwin's holdings. There was also a stylish RV that was pursued by the government. I believe Holesinger sold this for cash . . . before it was seized.
>
> [Holesinger] appeared more motivated and energized to work on the civil/financial aspects of the government's case than the criminal case proper.

*Id.*

[7] Nearly eleven months after the evidentiary hearing, the district court's magistrate judge issued his report and recommendation to deny Goodwin's amended motion to set aside his guilty plea. In relevant part, the magistrate judge found as follows:

> In this case, the criminal acts committed by GOODWIN's Indiana counsel, Mr. Holesinger, require the Court to carefully and stringently consider this claim and whether counsel's illegal activities affected GOODWIN's plea and whether such impacted GOODWIN's decision to accept a guilty plea. . . .
>
> * * *
>
> GOODWIN's claim that his guilty plea was unintelligent and involuntary is conclusory and does not set forth specific factual allegations to amount to a constitutional violation. His claims in his Amended Motion to Vacate . . . are not supported by reliable evidence and these claims contradict the statements GOODWIN made in his plea agreement and in open court at his rearraignment. . . .
>
> GOODWIN also claimed Mr. Holesinger told him that he had insufficient funds to put forth a defense at trial, and it was this information that led GOODWIN to accept a plea of guilty. However, GOODWIN was advised of his right to have appointed counsel at any time throughout his proceedings if he could no longer afford retained counsel or if a conflict arose and he could not afford separate counsel. Additionally, the record reflects GOODWIN's decision to plead guilty was a result of the plea agreement deadline to dismiss charges against his wife and office manager, not because of a lack of funds to proceed to trial.

In a letter after his sentencing, GOODWIN stated that he accepted a guilty plea because he feared the prosecutor would proceed with charges against [Mrs. Goodwin] and [the office manager] and he wanted to "save them."

\* \* \*

The evidence presented at the evidentiary hearing and from documents of record in this case indicate that GOODWIN's attorney, Mr. Holesinger, was convicted of Wire Fraud and Theft from a pattern of stealing and/or embezzling from his clients. This is not disputed by the government and in fact, Mr. Holesinger appeared at the evidentiary hearing . . . . However, *evidence presented at the evidentiary hearing was inadequate to show what amount, if any, Mr. Holesinger might have stolen or embezzled from GOODWIN.* Although GOODWIN testified and presented records that he paid Mr. Holesinger approximately $400,000 over the course of the representation, GOODWIN has not established what amounts of money did not go to legitimate representation fees. In fact, it appears GOODWIN is claiming Mr. Holesinger embezzled approximately $380,000, meaning that GOODWIN believes less than $20,000 was spent on the defense of a complicated Medicaid Fraud case spanning over a year and a half. The evidentiary hearing record shows Mr. Holesinger provided legitimate legal services to GOODWIN. He hired an expert, Ms. Miller, hired co-counsel, Mr. DeBoer, hired local counsel, William E. Kelly III, and traveled and investigated this case, and continued to provide representation from the date he was retained in mid-2012 through sentencing in April of 2013. Thus, *GOODWIN has failed to show Mr. Holesinger actually embezzled from him, or, if he did, the amount Mr. Holesinger embezzled.* GOODWIN certainly has established Mr. Holesinger's bad acts against other clients but at most, he has only shown Mr. Holesinger might have stolen from GOODWIN. In any event, *GOODWIN has failed to meet his burden to show that such behavior resulted in deficient performance of counsel and has further failed to prove*

*how the deficient performance prejudiced GOODWIN's criminal case*. Mr. Holesinger's conduct in defrauding other clients undermines confidence in the legal system and calls into question the representation provided by Mr. Holesinger to GOODWIN. The Court considers Mr. Holesinger's behavior reprehensible and has nothing positive to say about it. However, the burden remains on GOODWIN to show both an actual deficient performance and resulting prejudice and the Court cannot impute the dishonesty of Mr. Holesinger in stealing from other clients to his representation of GOODWIN. It is GOODWIN's task to show prejudice by showing specific actions taken or not taken by Mr. Holesinger which would have altered the outcome or altered GOODWIN's decision to plead guilty. For example, GOODWIN did not show that the alleged embezzlement caused Mr. Holesinger to fail to hire an expert *and* that such failure would have changed the course of his case. This high burden falls on GOODWIN despite Mr. Holesinger's clearly egregious behavior that GOODWIN became aware of after-the-fact of the plea and sentencing and which has undermined GOODWIN's confidence in Mr. Holesinger's representation. GOODWIN, throughout his Motion to Vacate and his evidentiary hearing, argued that his attorney, Mr. Holesinger, was convicted of wrongdoing in the handling of client funds. GOODWIN then leaps to the conclusion that this wrongdoing resulted in per se deficient performance in GOODWIN's representation which also resulted in per se prejudice in GOODWIN's criminal case. This automatic leap from proving an attorney's wrongdoing or criminal behavior to proving deficient performance and prejudice is misguided. Proving breach of the standard of care owed to a client and proving deficient performance are not identical processes or findings, nor is proving actual prejudice identical.

* * *

. . . [D]espite his conclusory claims that he would have "insisted on a trial," he has failed to show such an insistence would have

been rational. He testified at the evidentiary hearing that "he wouldn't continue with someone stealing from me" if he had known about the alleged theft/embezzlement during the representation. As set out above, however, *he never established whether or what amount of funds were misappropriated*. Mr. Holesinger's conviction documents . . . did not include charges that Mr. Holesinger misappropriated funds from GOODWIN and to the Court's knowledge GOODWIN was never named as a victim in a criminal case filed against Mr. Holesinger. GOODWIN must offer more than he has to establish that he has met the prejudice showing required . . . . Furthermore, he has failed to meet his burden to show these alleged constitutional violations even occurred, because they are contradicted by earlier statements made by GOODWIN and no supporting documentary evidence or testimony corroborates GOODWIN's change of testimony.

* * *

GOODWIN gave conflicting testimony and statements regarding the Miller report. He acknowledged at one point that he had discussed it with [Holesinger] prior to his plea and was told the Miller report was not favorable to his case. He later claimed he did not know about the report until after his sentencing. . . . [T]o the extent that [the Miller report] relates generally to the claim that Mr. Holesinger failed to investigate possible defenses, GOODWIN has failed to show prejudice by articulating what defenses GOODWIN had to the allegations in the superseding indictment and how Mr. Holesinger's alleged deficient performance affected the outcome of his guilty plea. Furthermore, *no argument was made as to what specific information was contained in the report that would have been a rational basis for GOODWIN to insist upon a trial*, rather than pleading guilty. Ms. Miller could have been subpoenaed to testify at the evidentiary hearing if she had specific information regarding a viable defense for GOODWIN's case.

*Id.* at 116, 118-23, 129 (emphases added; citations omitted). The district court then adopted the magistrate's findings and entered judgment against Goodwin.

[8] In February of 2017, Goodwin filed suit against DeBoer in the Lake Superior Court. Goodwin's complaint alleged that DeBoer had committed legal malpractice, breach of fiduciary duty, and fraudulent concealment. According to his complaint, Goodwin learned of DeBoer's misconduct from DeBoer's June 2016 statement to the district court in support of Goodwin's amended motion to vacate his guilty plea. In particular, Goodwin alleged that DeBoer had breached his duty of care to Goodwin when:

> a.    During visits to Clark Holesinger's office, [DeBoer] "overheard Holesinger's portions of phone conversations cutting deals with bankers in charge of Goodwin's holdings."
>
> b.    [DeBoer] was aware [Goodwin] owned a stylish RV that was pursued by the government. [DeBoer] believes "Holesinger sold the RV for cash . . . before it was seized."
>
> c.    [DeBoer] observed "Clark Holesinger appeared more motivated and energized to work on the civil/financial aspects of the government's case than the criminal case proper."

Appellant's App. Vol. 2 at 20. Goodwin further alleged that DeBoer failed to "disclose the Medicaid expert's draft report to [Goodwin]," which report he generically alleged "supported a very strong defense." *Id.* at 21. Because of DeBoer's alleged misconduct, Goodwin continued, Goodwin "was unable to make an informed decision regarding the outcome of his case" and he "would

not have ple[aded] guilty . . . ." *Id.* at 19, 24. That is, Goodwin alleged only that, but for DeBoer's alleged malpractice, the outcome of the federal criminal action would have been different. In due course, DeBoer moved for summary judgment, which the trial court granted. This appeal ensued.

## Discussion and Decision

[9] Goodwin appeals the trial court's entry of summary judgment for DeBoer. As our Supreme Court has stated:

> This Court reviews summary judgment orders *de novo*. Summary judgment is appropriate if the designated evidence shows there is no genuine issue as to any fact material to a particular issue or claim, and the moving party is entitled to judgment as a matter of law. In viewing the matter through the same lens as the trial court, we construe all designated evidence and reasonable inferences therefrom in favor of the non-moving party. Legal questions, such as contract interpretation, are well-suited for summary judgment. The party appealing the trial court's summary judgment determination bears the burden of persuading us the ruling was erroneous. Nonetheless, we "carefully scrutinize[] the trial court's decision to assure that the party against whom summary judgment was entered was not improperly prevented from having its day in court."

*Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 912-13 (Ind. 2017) (citations omitted; alteration original to *Ryan*). Further, "we may affirm a grant of summary judgment upon any theory supported by the evidence." *Miller v. Danz*, 36 N.E.3d 455, 456 (Ind. 2015).

Although Goodwin's complaint alleges three claims, the essence of his complaint is that DeBoer committed legal malpractice when DeBoer did not inform Goodwin of Holesinger's purported misappropriation of funds and also when DeBoer did not share the Miller report with Goodwin. A claim of legal malpractice invokes the "trial-within-a-trial" doctrine, under which

> a client alleging legal malpractice must prove not only that the lawyer's conduct fell below the governing duty of care but also that the client would have prevailed had the lawyer not been negligent . . . .

> * * *

> To prevail on [a] legal malpractice claim . . . , [the client] has to prove three things: (1) She retained the firm to represent her legal interests, so that the firm owes her a duty of care; (2) the firm breached its duty of care by failing to exercise the ordinary skill and knowledge expected of lawyers; and (3) the firm's breach was the proximate cause of [the client's] injury. . . .

> . . . [U]nder the ["trial-within-a-trial"] doctrine, *the client must show the outcome of the botched representation would have been more favorable to the client had the lawyer not been negligent. In other words, the client must prove the lawyer's negligence proximately caused her injury*. . . .

*Roumbos v. Vazanellis*, 95 N.E.3d 63, 64-66 (Ind. 2018) (emphasis added). In legal malpractice actions, the proximate causation requirement is a "but for" requirement. *See, e.g.*, Richard H.W. Maloy, *Proximate Cause: The Final Defense in Legal Malpractice Cases*, 36 U. Mem. L. Rev. 655, 671-77 (2006). That is, the

client-plaintiff must show that, had the attorney-defendant not acted as he did, the result of the underlying lawsuit would have been different. *Id.*

[11] In his complaint, Goodwin alleged that, but for DeBoer's alleged misconduct, he would not have pleaded guilty in the federal criminal action. In his motion for summary judgment, DeBoer argued that Goodwin in effect seeks to relitigate the ineffective assistance of counsel claim he made in the district court against Holesinger, which is not permitted. *See, e.g.*, *Williams v. Maschmeyer*, 870 N.E.2d 1069, 1070 (Ind. Ct. App. 2007) ("under Indiana precedent, a post-conviction finding that counsel was not ineffective provides the necessary identity of issues to preclude a malpractice action stemming from the same proceedings.") (brackets and quotation marks omitted). That is, DeBoer argued that the district court had already heard and found that Goodwin had failed to show that Holesinger had rendered ineffective assistance to Goodwin with respect to Holesinger's misappropriation of funds and also with respect to informing Goodwin of the Miller report. DeBoer asserted that Goodwin's complaint here was ultimately about those same issues. The trial court agreed, and so do we.

[12] As we have explained:

> Issue preclusion[, also known as collateral estoppel,] bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. If issue preclusion applies, the former adjudication is conclusive in the subsequent action, even if the actions are based on different claims. The former

adjudication is conclusive only as to those issues that were actually litigated and determined therein. Thus, issue preclusion does not extend to matters that were not expressly adjudicated and can be inferred only by argument. In determining whether issue preclusion is applicable, a court must engage in a two-part analysis: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue, and (2) whether it is otherwise unfair to apply issue preclusion given the facts of the particular case. The non-exhaustive factors to be considered by the trial court in deciding whether to apply issue preclusion include: (1) privity, (2) the [party's] incentive to litigate the prior action, and (3) the ability of the [party] to have joined the prior action.

*Angelopoulos v. Angelopoulos*, 2 N.E.3d 688, 696 (Ind. Ct. App. 2013), *trans. denied*.

[13] The district court's judgment against Goodwin on his motion to vacate his guilty plea conclusively established that Goodwin did not show that Holesinger's misappropriation of funds (against clients other than Goodwin) affected his representation of Goodwin or that Goodwin would not have pleaded guilty had he known of Holesinger's misconduct. It further conclusively established that Goodwin had failed to carry his burden to show that, had he known of the Miller report, he would not have pleaded guilty. The district court's judgment in both respects precludes Goodwin from relitigating those issues here. *See id.*; *Williams*, 870 N.E.2d at 1070.

[14] Thus, the designated evidence demonstrates as a matter of law that Goodwin cannot show that DeBoer's alleged misconduct would have resulted in a different outcome. DeBoer's alleged misconduct is simply a failure to inform

Goodwin of Holesinger's misconduct and the Miller report, but the district court has already expressly found that Goodwin did not adequately show that he would not have pleaded guilty had he known of Holesinger's misconduct or the Miller report. *See Sullivan v. Am. Cas. Co.*, 605 N.E.2d 134, 139 (Ind. 1992) (holding that "identity of parties" is not required "for the defensive use of collateral estoppel"). Goodwin's claim against DeBoer is derivative of his claim against Holesinger. Because his claim against Holesinger has been adjudicated, his collateral claim against DeBoer must also fail.

[15] Nonetheless, Goodwin argues[1] that it would be unfair to apply issue preclusion against him because the United States Court of Appeals for the Fifth Circuit has agreed to review part of the district court's denial of his motion to vacate his guilty plea.[2] But the Fifth Circuit's certificate of appealability is expressly limited to the issue of whether Holesinger rendered ineffective assistance when he failed to appear at Goodwin's guilty plea hearing. That issue is not relevant to our appeal. We reject Goodwin's argument that it would be unfair to apply issue preclusion on these facts.

[16] In sum, the designated evidence shows that no genuine issue of material fact exists on the question of proximate causation, which underlies each of

---

[1] We agree with DeBoer that much of Goodwin's purported arguments on appeal are "so cursory [as] to defy the cogent argument rule." Appellee's Br. at 32; *see* Ind. Appellate Rule 46(A)(8)(a).

[2] We take judicial notice of the Fifth Circuit's order. We also note that Goodwin does not argue that the Fifth Circuit's decision to review part of the district court's judgment renders the remainder of that judgment nonfinal.

Goodwin's claims against DeBoer. Thus, DeBoer is entitled to judgment as a matter of law, and we affirm the trial court's entry of summary judgment for DeBoer accordingly.

[17] Affirmed.

Crone, J., and Pyle, J., concur.