

FILED

Oct 03 2023, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael A. Sarafin
Adam J. Sedia
Susan K. Swing
Johnson & Bell, P.C.
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

David S. Gladish
Mark J. Schocke
Gladish Law Group
Highland, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Munster Medical Research Foundation, Inc., *Appellant-Defendant,* <br><br> v. <br><br> Patricia Hintz, *Appellee-Plaintiff* | October 3, 2023 <br><br> Court of Appeals Case No. 23A-CT-485 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Calvin D. Hawkins, Judge <br><br> Trial Court Cause No. 45D02-2002-CT-152 |

**Opinion by Judge Mathias**
Judges Vaidik and Pyle concur.

**Mathias, Judge.**

Munster Medical Research Foundation, Inc. ("MMRF") appeals the Lake Superior Court's judgment in favor of Patricia Hintz on her complaint alleging MMRF's negligence following a jury trial. MMRF presents several issues for our review:

> 1. Whether the trial court erred when it denied MMRF's summary judgment motion.
>
> 2. Whether the trial court abused its discretion when it granted a motion in limine regarding MMRF's proffered nonparty defense.
>
> 3. Whether the trial court abused its discretion when it denied MMRF's motion for judgment on the evidence.
>
> 4. Whether the trial court abused its discretion when it instructed the jury.

We affirm in part, reverse in part, and remand for a new trial.

## Facts and Procedural History

MMRF owns and operates Community Hospital in Munster. On August 9, 2022, Hintz's mother, Betty, was a patient there. On that date, Alfred Peacock was an ultrasound technologist working at the hospital. In the course of Betty's medical treatment, Peacock was instructed to perform an ultrasound on Betty, who was in one of two beds in a shared hospital room. Peacock plugged in a portable ultrasound machine into an outlet "[a]t the head of the bed." Tr. Vol. 1, p. 216. The machine was located at the foot of Betty's bed. The lights in the room had been "turned down" to avoid reflections on the ultrasound machine's screen. *Id.* at 217.

[4]    Peacock was approximately half-way through the thirty-minute procedure when Hintz arrived to visit Betty. Hintz's sister was there and had asked Hintz to bring some things for Betty from her home. Hintz's "arms were full" as she was carrying two bags when she entered the room and approached Betty's bedside. Tr. Vol. 2, p. 49. Suddenly and without warning, Hintz "fell onto [her] knees." *Id.* at 36. Only after her fall did Hintz see that the cord to the ultrasound machine was "out in the walkway" and that her foot had gotten stuck in a "loop" of the cord. *Id.* at 37, 51. Hintz sustained injuries as a result of the fall.

[5]    On February 7, 2020, Hintz filed a complaint alleging that MMRF was negligent and caused her injuries. On September 30, 2022, MMRF filed a motion for summary judgment. In its memorandum in support of summary judgment, MMRF argued that Peacock was an independent contractor and, thus, MMRF could not be liable for his negligence. MMRF also argued that the power cord on the floor was not an unreasonably dangerous condition as a matter of law.

[6]    Hintz did not file anything in opposition to summary judgment. Instead, at the hearing on MMRF's motion, Hintz argued that MMRF had a duty to make the hospital reasonably safe for Hintz, who was an invitee, and that whether MMRF breached that duty was a question of fact precluding summary judgment. In support, Hintz cited portions of her deposition testimony, which had been designated as evidence in support of summary judgment by MMRF. MMRF objected to Hintz's reliance on that testimony, arguing that it had only designated portions of the deposition. But Hintz pointed out that, in MMRF's

"Designation of Evidence in Support of Its Motion for Summary Judgment," MMRF had listed the entire deposition transcript of Hintz with no specific citations to page numbers. In addition, Hintz argued that Peacock was a dual employee of both MMRF and Anders Group LLC ("Anders") and that MMRF was vicariously liable for Peacock's negligence. The trial court denied MMRF's summary judgment motion.

[7] Prior to the ensuing jury trial, Hintz filed a motion in limine to bar evidence that Peacock's employer, Anders, was a nonparty liable to Hintz. MMRF had not timely asserted a nonparty defense. MMRF objected to the motion in limine and argued that, while "the verdict form in this case would not include a non-party for apportionment of fault by the jury, it remains [Hintz]'s burden to prove MMRF is vicariously liable for the negligent conduct that [Hintz] alleges caused her fall, which remains a contested issue in this case." Appellant's App. Vol. 2, p. 240. The trial court granted the motion in limine over MMRF's objection and precluded evidence that Peacock was an independent contractor employed by Anders.

[8] During trial, Hintz argued that Peacock was an agent of MMRF and that MMRF was, therefore, liable for his negligent conduct. Hintz also argued in the alternative that MMRF was liable to Hintz, its invitee, because it breached its duty to take reasonable care to make its premises safe for her as its invitee. MMRF objected to final instructions regarding a principal's liability for the acts of its agent, but the trial court gave those instructions. The jury found that Hintz had incurred $50,000 in damages, but it found that she was 35% at fault

and MMRF was 65% at fault in causing her injuries. Accordingly, the verdict was $32,500 in favor of Hintz. This appeal ensued.

## Discussion and Decision

### *Issue One: Summary Judgment*

MMRF first contends that the trial court erred when it denied its motion for summary judgment. Our standard of review is well settled:

> When this Court reviews a grant or denial of a motion for summary judgment, we "stand in the shoes of the trial court." *Burton v. Benner*, 140 N.E.3d 848, 851 (Ind. 2020) (quoting *Murray v. Indianapolis Public Schools*, 128 N.E.3d 450, 452 (Ind. 2019)). Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Campbell Hausfeld/Scott Fetzer Co. v. Johnson*, 109 N.E.3d 953, 955-56 (Ind. 2018) (quoting Ind. Trial Rule 56(C)). We will draw all reasonable inferences in favor of the non-moving party. *Ryan v. TCI Architects/Engineers/Contractors. Inc.*, 72 N.E.3d 908, 912-13 (Ind. 2017). We review summary judgment de novo. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

*Arrendale v. Am. Imaging & MRI, LLC*, 183 N.E.3d 1064, 1067-68 (Ind. 2022).

As our Court has explained,

> [n]egligence is a tort that requires proof of "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach." *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004). "Negligence will not be inferred; rather, all of the elements of a negligence

action must be supported by specific facts designated to the trial court or reasonable inferences that might be drawn from those facts." *Kincade v. MAC Corp.*, 773 N.E.2d 909, 911 (Ind. Ct. App. 2002). "An inference is not reasonable when it rests on no more than speculation or conjecture." *Id.* "A negligence action is generally not appropriate for disposal by summary judgment." *Id.* "However, a defendant may obtain summary judgment in a negligence action when the undisputed facts negate at least one element of the plaintiff's claim." *Id.*

*Evansville Auto., LLC v. Labno-Fritchley*, 207 N.E.3d 447, 454 (Ind. Ct. App. 2023), *trans. denied*. Simply put,

"[g]enerally, it is the jury's function to determine whether a defendant's conduct was a substantial factor in bringing about injury; when there might be a reasonable difference of opinion as to the foreseeability of a particular risk or the reasonableness with regard to it, the question is also one for the jury." *Harper v. Guarantee Auto Stores*, 533 N.E.2d 1258, 1264 (Ind. Ct. App. 1989), *trans. denied*. "Only in plain and indisputable cases, where only a single inference or conclusion can be drawn, are the questions of proximate cause and intervening cause matters of law to be determined by the court." *Peters v. Forster*, 804 N.E.2d 736, 743 (Ind. 2004).

*Force v. New China Hy Buffet, LLC*, ___ N.E.3d ___, No. 22A-CT-2759, 2023 WL 6074318, at *2 (Ind. Ct. App. Sept. 19, 2023).

[11]     MMRF argues that the trial court erred when it denied its summary judgment motion "because (1) it permitted Hintz's untimely responsive designation of evidence and (2) the properly designated evidence established as a matter of law that MMRF did not owe and did not breach any duty to Hintz thereby

affirmatively negating essential elements." Appellant's Br. at 36. We address each contention in turn.

*Hintz's Designation of Evidence*

[12] Hintz did not file any response to MMRF's summary judgment motion. Instead, during the hearing on the motion, Hintz made argument based on MMRF's designated pages of her deposition, which MMRF had designated as evidence in support of summary judgment. MMRF maintains that it did not designate the entire deposition, but only certain pages cited in its memorandum in support of summary judgment. But MMRF ignores its filing entitled "Designation of Evidence in Support of Its Motion for Summary Judgment," which designated the entire deposition without any specific citations. Accordingly, Hintz was entitled to rely on that designated evidence in support of her argument in opposition to summary judgment.[1] *See, e.g.*, *Countrymark Coop. Inc. v. Hammes*, 892 N.E.2d 683, 690 n.2 (Ind. Ct. App. 2008) (holding that party opposing summary judgment could rely on entire deposition where movant "designated the entire deposition and later in a different filing identified specific pages"), *trans. denied*.

---

[1] In any event, as we address below, MMRF did not satisfy its burden on summary judgment to negate an element of Hintz's negligence claim, and, while it was a risk for Hintz to assume as much, the burden never shifted to her to designate evidence in opposition to summary judgment.

*Duty and Breach*

[13] MMRF also argues that it owed no duty of care to Hintz because Peacock was an independent contractor. In support, MMRF cites *Bethlehem Steel Corp. v. Lohman*, 661 N.E.2d 554, 556 (Ind. Ct. App. 1995), where we held in relevant part that,

> where the instrumentality causing the injury is in the control of the independent contractor, the complainant must show either that the landowner assumed control of the instrumentality or had superior knowledge of the potential dangers involved in its operation; *otherwise, the landowner owes no duty to the contractor's employee*.

(Emphasis added.) Further, "where an instrumentality causing injury was in the control of an independent contractor, a duty will not be found where there is no evidence that the landowner maintained any control over the 'manner or means' by which the contractor engaged in its work." *Id.* at 557. MMRF contends that, because Peacock was an independent contractor and because MMRF had no control over the placement of the ultrasound machine or the cord, MMRF owed no duty to Hintz.

[14] But Hintz asserts, and we must agree, that *Bethlehem Steel* is inapposite here. The question in *Bethlehem Steel* was whether a property owner had a duty to provide an independent contractor with a safe place to work, which is not at issue here. *Id.* at 556. As Hintz points out, she was an invitee of MMRF. "Under Indiana premises liability law, a landowner owes the highest duty to an invitee: the duty to exercise reasonable care for his protection while he is on the

landowner's premises." *Converse v. Elkhart Gen. Hosp., Inc.*, 120 N.E.3d 621, 625 (Ind. Ct. App. 2019) (citing *Burrell v. Meads*, 569 N.E.2d 637, 639-40 (Ind. 1991)).

[15] Further, our courts have adopted Restatement (Second) of Torts section 343, which provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

[16] MMRF additionally argued that it was entitled to summary judgment because the technician's power cord was not an "unreasonably dangerous condition" as a matter of law. Appellant's App. Vol. 2, p. 152. And it argued that, even if it were, MMRF "had no knowledge" of the cord and cannot be held liable. *Id.* We cannot agree.

[17] In *Roumbos v. Samuel G. Vazanellis & Thiros and Stracci, PC*, a woman tripped over "at least three different wires or cords running along the floor" in a hospital room while visiting her husband, who was a patient there. 95 N.E.3d 63, 68 (Ind. 2018). The plaintiff hired a lawyer, who did not timely file her

complaint. She then sued her lawyer for legal malpractice. The trial court granted the lawyer's summary judgment motion. On appeal, our Supreme Court reversed the trial court and held that the lawyer had "failed to establish, as a matter of law, that Plaintiff would not have succeeded in her premises-liability claim against the hospital." *Id.* at 64. In particular, the Court concluded that, "[c]onstruing the designated facts most favorably to [the plaintiff] and drawing all reasonable inferences in her favor, . . . a jury could reasonably find the wires were not obvious to the ordinary reasonable person in [plaintiff's] position." *Id.* at 68.

[18] Likewise, here, the designated facts construed in favor of Hintz would support a jury's determination that the power cord was not an obvious danger to a reasonable person in Hintz's position. And whether MMRF knew or should have known that the mobile ultrasound machine's power cord posed an unreasonable danger to invitees is a question of fact precluding summary judgment. MMRF's assertion that it had "no knowledge" that the machine had to be plugged in is insufficient to negate the issue of whether it *should have* known about the danger posed by the power cord, and a reasonable fact-finder could readily conclude that MMRF should have known about the technician's use of equipment. Indeed, MMRF was in charge of Betty's care, and the ultrasound was ordered in the course of her care.

[19] In sum, MMRF did not negate any of the elements of Hintz's premises liability claim in its summary judgment motion. Accordingly, MMRF did not meet its

burden under Trial Rule 56(C), and the trial court did not err when it denied its summary judgment motion.

### Issue Two: Motion in Limine

[20] MMRF next contends that the trial court abused its discretion when it granted Hintz's motion in limine to preclude a nonparty defense, which morphed into an order precluding evidence that Peacock was an independent contractor. The grant or denial of a motion in limine is within the sound discretion of the trial court and is an adjunct of the power of trial courts to admit and exclude evidence. *Terex-Telelect, Inc. v. Wade*, 59 N.E.3d 298, 302 (Ind. Ct. App. 2016), *trans. denied*. Therefore, when reviewing a grant or denial of a motion in limine, we apply the standard of review for the admission of evidence, which is whether the trial court abused its discretion. *Id.* at 302-03. We will find that a trial court has abused its discretion only when its decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* at 303.

[21] Hintz's motion in limine No. 18 sought to

> [b]ar[] any evidence that some unnamed, non-party is a proximate cause of [Hintz's] injuries. [MMRF] has never named any non-party under Indiana Code [section] 34-51-2-15. A non-party defense is one that must be affirmatively pled and the burden is on [MMRF] to prove such a defense. Additionally, such a non-party defense must be made within 180 days prior to the expiration of the statute of limitations, which [MMRF] failed to do. Moreover, [MMRF has] not named a non-party in their pretrial contentions and therefore should not be allowed to make such arguments before a jury. I.C. § 34-51-2-15; *See also*

*Owens Corning v. Cobb*, 754 N.E.2d 905 (Ind. 2001); and *Cornell Harbison v. May*, 546 N.E.2d 1186 (Ind. 1989).

Appellant's App. Vol. 2, p. 204.

[22] Initially, the parties agree that MMRF may not assert a nonparty defense. Thus, the trial court's order with respect to that specific argument is affirmed.

[23] However, the parties disagree as to whether MMRF should have been permitted to introduce evidence at trial that Peacock was an independent contractor. On that issue, Hintz argued to the trial court that Peacock's status as an independent contractor was irrelevant to the issues at trial because he was an *agent* of MMRF, and the trial court agreed.

[24] In support of that argument, Hintz relied on our Supreme Court's opinion in *Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142 (Ind. 1999). Our Supreme Court has recently examined its holding in *Sword* and explained that:

> "[Vicarious liability] is a legal fiction by which a court can hold a party legally responsible for the negligence of another, not because the party did anything wrong but rather because of the party's relationship with the wrongdoer." *Sword*, 714 N.E.2d at 147. Respondeat superior is the doctrine most often associated with vicarious liability in the tort context. It relies on an employer-employee or principal-agent relationship and generally does not apply to independent contractors. However, even absent an actual agency relationship, a principal may sometimes be vicariously liable for the tortious conduct of another under the doctrine of apparent agency. *Id.* Apparent agency may be established when a third party reasonably believes there is a

principal-agent relationship based on the principal's manifestations to the third party. *Id.*

\* \* \*

In *Sword*, a patient seeking medical attention for the birth of a child alleged that an independent contractor anesthesiologist working at a hospital committed malpractice while giving the patient an epidural. *Id.* at 145-46. Prior to *Sword*, Indiana courts followed the general rule that hospitals could not be held liable for the negligent actions of independent contractor physicians. *Id.* at 149. Courts also viewed respondeat superior as inapplicable to hospitals "because the hospitals could not legally assert any control over the physicians." *Id.*; *see also Iterman v. Baker*, 214 Ind. 308, 316-18, 15 N.E.2d 365, 369-70 (1938). However, we acknowledged the "ongoing movement by courts to use apparent or ostensible agency as a means to hold hospitals vicariously liable for the negligence of some independent contractor physicians." *Sword*, 714 N.E.2d at 150.

Following this trend, *Sword* changed Indiana's rule regarding a hospital's prospective vicarious liability. *Id.* We expressly adopted the Restatement (Second) of Torts section 429 (1965), holding that a hospital may be found vicariously liable for the negligence of an independent contractor physician under the doctrine of apparent agency.[] *Id.* at 149. Section 429 provides:

> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

*Id.*

Under *Sword*'s Section 429 apparent agency analysis, courts look at two main factors: (1) the principal's manifestations that an agency relationship exists and (2) *the patient's resulting reliance*. *Id.* at 151. For the manifestations prong, courts see whether the hospital "acted in a manner which would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital." *Id.* (citing *Kashishian v. Port*, 167 Wis.2d 24, 481 N.W.2d 277, 284-85 (1992)). For the reliance prong, courts see whether "the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence." *Id.* (citing *Kashishian*, 481 N.W.2d at 285). . . .

*Arrendale v. Am. Imaging and MRI, LLC*, 183 N.E.3d 1064, 1068-69 (Ind. 2022).

[25] As MMRF argues, our courts have not applied the *Sword* apparent agency rule to a negligence claim brought by a plaintiff who was not a *patient* in a health care setting. Hintz provides no counterargument, but merely states, in a parenthetical and without citation to authority, that *Sword* "does not only apply to medical malpractice cases[.]" Appellee's Br. at 39.

[26] We are not persuaded by Hintz's cursory position. As our Supreme Court has made clear, a plaintiff's *reliance* on a hospital's manifestations that an agency relationship exists between it and an independent contractor is an essential element of apparent agency. *Arrendale*, 183 N.E.3d at 1069. Here, Hintz did not argue to the trial court, and she does not argue on appeal, that she relied in any way on MMRF's holding out Peacock as its agent. Indeed, whereas a patient relies on the expertise of a chosen hospital for her care, here, Hintz was a

visitor, and she has not asserted that she had any expectation that MMRF would do anything other than provide her with reasonably safe premises. In other words, whether Peacock was an MMRF employee or independent contractor is of no moment with respect to Hintz's reliance on any representations MMRF may have made regarding Peacock's employment status under the circumstances present here.

[27] Accordingly, on this limited briefing, we are unable to say that *Sword* is applicable here. Thus, the trial court erred when it found that apparent agency principles applied. Because MMRF did not timely name a nonparty, it was appropriate to bar MMRF from naming Peacock's employer. But, as MMRF demonstrates, the evidence that Peacock was an independent contractor should have been admissible at trial because it "was relevant to the elements of Hintz's claim and whether she met her burden" to prove MMRF's negligence. Appellant's Br. at 41. In other words, Peacock's status as an independent contractor was relevant because it went to the issue of vicarious liability. Of course, the issue remains whether MMRF was negligent in not taking precautions to make the premises safe for invitees, i.e., whether it knew or should have known that Peacock would leave a power cord in a walkway in a dimly-lit room and whether that posed a foreseeable danger to Hintz. *See, e.g.*, *Roumbos*, 95 N.E.3d at 68.

[28] The trial court abused its discretion when it barred MMRF from introducing evidence that Peacock was an independent contractor. As we explain below, because the issue of apparent agency was central to Hintz's argument at trial,

we reverse and remand for a new trial. If a new trial occurs, MMRF shall be permitted to introduce evidence that Peacock was an independent contractor, without naming his employer.

### Issue Three: Judgment on the Evidence

[29]     MMRF next contends that the trial court erred when it denied its motion for judgment on the evidence. As our Supreme Court has explained,

> [we review] a trial court's [ruling on a motion for] judgment on the evidence by applying the same standard that the trial court uses, looking only to the evidence and reasonable inferences most favorable to the non-moving party. *See Smith v. Baxter*, 796 N.E.2d 242, 243 (Ind. 2003); *American Optical Co. v. Weidenhamer*, 457 N.E.2d 181, 183 (Ind. 1983). Thus, the Court turns to the text of Trial Rule 50, which provides the standard for judgment on the evidence.
>
> Trial Rule 50(A) states in relevant part: "Where all or some of the issues in a case tried before a jury . . . are not *supported by sufficient evidence* . . . the court shall withdraw such issues from the jury and enter judgment thereon . . . A party may move for such judgment on the evidence." Ind. Trial Rule 50(A) (emphasis added). The purpose of a party's motion for judgment on the evidence under Rule 50(A) is to test the sufficiency of the evidence presented by the non-movant. *Nesvig v. Town of Porter*, 668 N.E.2d 1276, 1282-83 (Ind. Ct. App. 1996).

*Purcell v. Old Nat. Bank*, 972 N.E.2d 835, 839 (Ind. 2012).

[30]     Again, at trial, Hintz's principal argument was that MMRF was liable for her injuries because Peacock was its apparent agent. MMRF argues that, because that theory does not apply here, the trial court abused its discretion when it

denied its motion for judgment on the evidence. But Hintz also argued that MMRF was liable under a general premises liability theory as set out in *Burrell v. Meads*, 569 N.E.2d 637 (Ind. 1991). In *Burrell*, our Supreme Court held that invitees "are entitled to a duty of reasonable care from landowners as that duty is defined in Restatement (Second) of Torts § 343," which, again, provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Id.* at 640, 643.

[31] On appeal, MMRF asserts in relevant part that it was entitled to judgment on the evidence because "Hintz failed to present evidence showing that MMRF had any actual or constructive knowledge of a dangerous condition on its premises before she fell." Appellant's Br. at 51. In support, MMRF states that the

> only evidence Hintz presented during her case-in-chief was that nobody who was in the Room (Peacock, Betty, [her sister], the other patient, and the other visitor) between the time that Peacock entered the Room with the Machine until the time Hintz

fell, saw the power cord or had any reason to believe it was or could have been a "dangerous condition" before the fall. All of those people, in fact, did not see the cord on the floor before the fall or did not know what caused the fall.

*Id.* at 50.

[32] However, "looking only to the evidence and reasonable inferences most favorable to [Hintz,]" as we are required to do, the evidence presented at trial supports reasonable inferences that MMRF knew or should have known that mobile ultrasound machines were used in hospital rooms (MMRF owned the machine Peacock used); that those machines have power cords that have to be plugged in; and that the lights in the room had to be dimmed in order for Peacock to see the screen. *See Purcell*, 972 N.E.2d at 839. That evidence is sufficient to support Hintz's theory of liability under *Burrell*,[2] and the trial court did not abuse its discretion when it denied MMRF's motion for judgment on the evidence.

### *Issue Four: Jury Instructions*

[33] Finally, MMRF contends that the trial court abused its discretion when it instructed the jury. When we review a trial court's decision to give or refuse a tendered instruction, we consider whether: "1) the instruction correctly states the law; 2) the evidence in the record supports giving the instruction, and 3) the

---

[2] Whether, on retrial, that theory would result in a verdict favorable to Hintz is, of course, an open question.

substance of the instruction is covered by other instructions." *Simmons v. Erie Ins. Exchange*, 891 N.E.2d 1059, 1064 (Ind. Ct. App. 2008) (quoting *Hoosier Ins. Co. v. N.S. Trucking Supplies, Inc.*, 684 N.E.2d 1164, 1173 (Ind. Ct. App. 1997)). In determining whether sufficient evidence exists to support an instruction, we will look only to that evidence most favorable to the appellee and any reasonable inferences to be drawn therefrom. *Id.* We review a trial court's decision to give or refuse to give an instruction for an abuse of discretion. *Id.*

[34]  MMRF asserts that the trial court abused its discretion when it gave final instructions 17 through 22, which were relevant to Hintz's apparent agency theory of liability, and when it declined to give MMRF's proffered final instructions 7 through 9 regarding the limitations on a landowner's liability for an independent contractor's negligence. We address each contention in turn.

*Instructions 17 through 22*

[35]  The trial court gave the following final jury instructions:

> [No. 17:] A corporation acts through its agents. If, within the scope of its authority, a corporation's agent wrongfully acts or fails to act, the corporation is liable for that action or inaction.
>
> [No. 18:] A principal is one who authorizes another to act on its behalf, subject to the principal's control. The authorized person is called an agent.
>
> [No. 19:] A special agent is one authorized by a principal to perform one or more specific acts, either: (1) according to the principal's specific instructions; or (2) within the limits implied by the authorized acts.

[No. 20:] An agent acts within the scope of its express authority when the agent handles business the principal has specifically authorized.

[No. 21:] By giving the agent express authority, the principal also gives the agent implied authority to use the usual and reasonably necessary methods required to handle the principal's business.

[No. 22:] In addition to express and implied authority, an agent may also have apparent authority. "Apparent" means apparent to a third person, that is, someone other than the principal or the agent.

An agent has apparent authority when the principal places the agent in a position to act on behalf of the principal, and a third person reasonably believes that the principal authorized the agent to act.

If the third person reasonably relies on the agent's apparent authority, the principal is liable to the third person, even if the agent exceeded the authority given to it by the principal.

If however, the third person knows, or by using reasonable care should have known, that the exceeded its authority, the principal is not liable for the agent's actions.

Reasonable care means being careful and using good judgement and common sense.

Appellant's App. Vol. 3, pp. 136-41.

[36] Again, Hintz's primary argument at trial was that MMRF was liable for her injuries because Peacock was its agent. As we explained above, Hintz's reliance on that argument was misplaced. Further, as MMRF points out, the trial court

expressly found that, other than Peacock's testimony during an offer of proof, there was "no evidence of agency" to support final instructions Nos. 17 through 22. Tr. Vol. 2, p. 182. And the trial court found that the offer of proof was sufficient to support the instructions. But testimony in an offer of proof is not evidence. *See Bradford v. State*, 675 N.E.2d 296, 302 (Ind. 1996) (stating that an "offer of proof is part of the record only insofar as the defendant chooses to challenge the trial court's exclusion" and will not be considered "for any other purpose"). Thus, these instructions were not supported by the evidence, and the trial court abused its discretion when it gave these instructions.

[37] Apparent agency was Hintz's primary, but not sole, argument at trial. Because these instructions were erroneous, it is probable that the jury based its verdict on apparent agency. Under these circumstances, we reverse the trial court's judgment for Hintz and remand for a new trial.

*Proffered Final Instructions 6 through 8*

[38] MMRF proffered three instructions regarding a landowner's liability for an independent contractor's negligence, which the trial court declined to give. But MMRF's sole contention on appeal is that the trial court "abused its discretion when it did not provide MMRF's proposed independent contractor instructions based on the same offer of proof testimony on which Final Instructions 17 to 22 were based. The provision of such instructions would have fully instructed the jury on the parties' respective theories." Appellant's Br. at 53. Because we hold that the trial court abused its discretion when it relied on the offer of proof to

support Instructions 17 through 22, MMRF's argument in support of its proffered instructions must fail.

## Conclusion

[39] The trial court did not err when it denied MMRF's motion for summary judgment. However, the trial court abused its discretion when it precluded MMRF from presenting evidence that Peacock was an independent contractor and when it instructed the jury on agency. Because Hintz's primary argument at trial was based on the apparent agency doctrine, there is a reasonable probability that the jury relied on that theory when it entered its verdict for Hintz, and reversal of the judgment for Hintz is warranted. However, Hintz also argued that MMRF was liable under a premises liability theory, and the jury was instructed to consider the *Burrell* elements.[3] Accordingly, on remand, the trial court shall conduct a new trial consistent with this opinion.

---

[3] In her closing argument, Hintz argued in relevant part as follows:

> So the issue really comes down to what's the liability here? Well, you're going to get jury instructions. And the first jury instruction, this is going to be jury instruction number 13, and it talks about the obligations of a property owner to an invitee. And there's no dispute here that Patricia was an invitee invited onto the property to remain to visit her mother. So, here, we have that they knew that the condition existed or realized it created an unreasonable danger to an invitee, or should have discovered the condition as a danger. Number two, should have expected the invitee would not discover and realize the danger of the condition, that's where we got the room, dim lit lights, the curtains pulled; or would fail to protect herself against it. That's what we have in this instance. They failed to use reasonable care to protect someone like Patricia, which is simply making sure that the plug is not in a tight room in an area where someone is going to trip over that.

Reversed and remanded for a new trial.

Vaidik, J., and Pyle, J., concur.

---

Tr. Vol. 2, p. 196.